1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

CLIFFORD S.,

                          Plaintiff,

        v.

NANCY BERRYHILL, Deputy Commissioner
of Social Security for Operations,

                          Defendant.

Case No. 2:18-cv-00008-JCC-TLF

REPORT AND
RECOMMENDATION

Noted for **October 19, 2018**

12
13
14
15
16
17
18

        Plaintiff has brought this matter for judicial review of defendant's determination on his applications for disability insurance and supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). Plaintiff seeks reversal of the ALJ's decision and requests that the Court remand for a new decision based on the existing record.

19
20
21
22
23
24
25

        Plaintiff contends that the ALJ misapplied the law and lacked substantial evidence for his decision to deny benefits for the period between his alleged onset date (August 25, 2014) and his 50th birthday (September 13, 2016; the ALJ found him disabled as of that date.) Specifically, plaintiff argues that the ALJ erred by discounting his reports of severe limitations due to hand and arm weakness and numbness and other symptoms, and by failing to properly assess evidence of such limitations, including the opinion of plaintiff's treating physician.

26

REPORT AND RECOMMENDATION - 1

Plaintiff also contends that the ALJ should have found him disabled as of 6 months before his 50th birthday, the date he asserts that his age entered a "borderline situation."

The undersigned agrees that the ALJ erred and recommends that the ALJ's decision be reversed and remanded for a new determination based on the existing record.

## I. BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on January 31, 2015. Dkt. 9, Administrative Record (AR) 17. He filed an application for supplemental security income on July 23, 2015. *Id.* Both applications alleged that plaintiff's disability onset date was August 25, 2014. *Id.* These claims were denied initially and on reconsideration. *Id.*

A hearing was held before an administrative law judge (ALJ) on September 14, 2016. AR 34-83. Plaintiff, his mother, and a vocational expert appeared and testified. *Id.*

The ALJ determined that plaintiff suffers from the following severe impairments: "degenerative disk disease of the lumbar and cervical spine, hypertension, esophageal reflux, obesity, migraine headaches, and affective disorder." AR 19.

The ALJ found that before September 13, 2016, plaintiff was "a younger individual age 45-49." AR 26. The ALJ found that plaintiff's age category changed on that date to "an individual closely approaching advanced age." AR 26.

The ALJ found that before plaintiff's age category changed, even with the impairments and symptoms that were reflected in the medical records and in testimony, plaintiff could perform certain types of "sedentary" work, including jobs as a table worker, hand bander, final assembler, and assembler, that exist in significant numbers in the national economy. AR 26-27. The ALJ therefore found that plaintiff was not disabled before September 13, 2016. *Id.*

REPORT AND RECOMMENDATION - 2

The ALJ found plaintiff disabled beginning September 13, 2016, under a "direct application of Medical-Vocational Rule 201.09." AR 27.

The Appeals Council denied plaintiff's request for review on December 1, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed that decision in a complaint filed with this Court on January 8, 2018. Dkt. 4; 20 C.F.R. §§ 404.981, 416.1481.

## II.  STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*.

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have Residual Functional Capacity (RFC), and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009-10 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court reviews "only

REPORT AND RECOMMENDATION - 3

the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Revels,* 874 F.3d at 654. The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

III.  <u>THE ALJ'S CONSIDERATION OF PLAINTIFF'S AGE CATEGORY</u>

The ALJ concluded that plaintiff was disabled as of his 50th birthday, September 13, 2016, and not disabled before that date. AR 26-27.

Plaintiff contends that the ALJ erred in failing to consider whether he was in a "borderline situation" when he turned 49 years and 6 months old. This argument should be rejected by the Court.

First, plaintiff is incorrect that this is a situation where, because of the plaintiff's "borderline" age, the ALJ was required to consider whether to apply the next age category. An ALJ must consider the "age categories that apply to you during the period for which we must determine if you are disabled." 20 C.F.R. §§ 404.1563(b), 416.963(b); *see Shumaker v. Astrue*, 657 F. Supp. 2d 1178, 1185 (D. Mont. 2009) ("The regulation directs the ALJ to consider

REPORT AND RECOMMENDATION - 4

Shumaker's age throughout the time period for which disability is sought, not just the alleged onset date."). Courts reverse an ALJ's decision as "mechanically applying" the age guidelines when the ALJ's failure to consider the next-higher age category results in a non-disability finding.

For example, when the claimant is seeking disability insurance benefits, the ALJ must consider a claimant's age on the claimant's date last insured. *Kane v. Heckler*, 776 F.2d 1130, 1132-33 (3d Cir. 1985); 20 C.F.R. §§ 404.131, 404.321. Similarly, when the claimant is seeking supplemental security income (SSI) benefits, the ALJ must consider a claimant's age at the date of the ALJ's decision. *See Phillips v. Astrue*, 671 F.3d 699, 703 (8th Cir. 2012); *France v. Apfel*, 87 F. Supp. 2d 484, 491 (D. Md. 2000); 20 C.F.R. § 416.335.

Here, plaintiff is seeking both DIB and SSI benefits. AR 17. Accordingly, the ALJ considered plaintiff's claim as of the August 25, 2014, alleged disability onset date and through the date of the ALJ's November 1, 2016, decision. Plaintiff was eligible for DIB if he established his disability before December 31, 2019, his date last insured. AR 19; *see* 20 C.F.R. §§ 404.131, 404.321. Plaintiff was eligible for SSI benefits, payable the month following his July 23, 2015, application date, if he established disability before the date of the ALJ's decision. AR 17; *see* 20 C.F.R. § 416.335.

Plaintiff contends that the ALJ should have considered his age as of six months before his 50th birthday. He asserts that this is a "classic borderline age situation." Dkt. 11, p. 7. But plaintiff selects that date *because* it is the date on which, under his reading of the Social Security Administration (SSA) guidance,[1] he entered a "borderline situation." Unlike plaintiff's application date, alleged onset date, date last insured, or the date of the ALJ hearing, the date on

---

[1] *See* HALLEX I-2-2-42, "Borderline Age," 2016 WL 1167001, at *1.

REPORT AND RECOMMENDATION - 5

which plaintiff turned 49-and-6-months has no legal significance other than to place him within 6 months of the next age category.

In other words, if plaintiff's argument were credited, then every case in which a claimant changes age categories between the alleged onset date and the decision date would present a "classic borderline age situation." In every case, the ALJ would be required to simply move backward by six months the date on which the claimant entered a higher age category. This would still be a "mechanical application," but of a rule created by the Court and not the agency.

Second, even if the ALJ was required to consider whether to apply the next age category, the ALJ's written decision indicates that he did so here.

In a borderline situation, "an ALJ is not *required* to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category." *Lockwood v. Comm'r SSA*, 616 F.3d 1068, 1071 (9th Cir. 2010) (emphasis in original). Instead, the regulations require the ALJ only to *consider* whether to use the older age category. *Id.* at 1070.

In *Lockwood*, the Ninth Circuit found that an ALJ satisfies the consideration requirement by mentioning the claimant's date of birth and age category on the date of the ALJ's decision, citing the regulation that prohibits application of the age categories mechanically in a borderline situation (20 C.F.R. §§ 404.1563, 416.963), and evaluating the overall impact of all the factors in the claimant's case in reliance on the testimony of a vocational expert. *Lockwood*, 616 F.3d at 1071-72. The ALJ does not have an "obligation to make express findings" in the written decision. *Id.* at 1073; *see also Bowie v. Comm'r*, 539 F.3d 395, 399-401 (6th Cir. 2008).

Here, the ALJ mentioned plaintiff's date of birth and his age category before the "established disability date" and on that date, and observed that plaintiff became "an individual closely approaching advanced age" on the established disability date. AR 26. The ALJ cited the

regulations that prohibit mechanical application of the age categories in borderline situations. *Id.* (citing 20 C.F.R. §§ 404.1563, 416.963). And, contrary to plaintiff's assertion, the ALJ evaluated the overall impact of all the factors in plaintiff's case in reliance on a vocational expert's testimony. *See* AR 19-28.

Plaintiff's argument on this point reiterates his contention that the ALJ's RFC finding was incomplete. Dkt. 16, p. 2. But whether the ALJ *correctly* evaluated the overall impact of all factors in plaintiff's case is a different question than whether the ALJ performed such an evaluation at all; the latter is all that *Lockwood* requires. *See* 616 F.3d at 1071-72.

Plaintiff relies on an opinion from the United States District Court for the Eastern District of Virginia, and several other decisions from outside the Ninth Circuit, to contend that the ALJ's analysis regarding the age categories was insufficient. Dkt. 16, pp. 3-6 (citing *Pickett v. Astrue*, 895 F. Supp. 2d 720, 724 (E.D. Va. 2012)). The court in *Pickett v. Astrue* held that an ALJ erred by "generally refer[ring] to the Grids, without explaining *why* he chose to apply Plaintiff's chronological age." *Id.* As plaintiff acknowledges, that case applies a different rule than the Ninth Circuit articulated in *Lockwood*, 616 F.3d at 1074 ("The ALJ did not err when she did not explain in her decision why she used Lockwood's chronological age—54 years old—instead of treating Lockwood as a person of advanced age."). Moreover, as discussed above, this is not a "borderline situation," and therefore this Court does not need to address the issue.

## IV.  MEDICAL OPINION EVIDENCE

Plaintiff also contends that the ALJ erred in discounting his treating physician's opinion. The Court should reverse and remand on this basis.

"The medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and

REPORT AND RECOMMENDATION - 7

is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). If the treating opinion is uncontradicted, an ALJ must provide clear and convincing reasons to reject it. *Id.* The ALJ must support his or her decision to reject the treating physician's opinion with "specific, cogent reasons." *Id.*

On the other hand, when other evidence contradicts a treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Revels*, 874 F.3d at 654. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

The regulations require the ALJ to evaluate any medical opinion based on a number of factors, including: 1) the examining relationship; 2) the treatment relationship; 3) supportability; 4) consistency and; 5) specialization. *See* 20 C.F.R. § 404.1527(c). More weight is given to opinions from treating sources, sources who have examined the claimant a number of times, and sources who have greater knowledge about the claimant's medical impairments. *See* 20 C.F.R. § 404.1527(c)(2)(i); *Trevizo*, 871 F.3d at 676 ("[T]he ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinion should be credited.").

Dr. Brunk was plaintiff's treating physician from September 2014 to at least August 2016. *See* AR 344, 821. He completed a Physical Functional Evaluation form for plaintiff in July 2015. AR 360-62. He reviewed plaintiff's reported symptoms, cited results of MRIs of plaintiff's neck and lower back, and evaluated plaintiff's range of motion throughout the body. AR 360-61,

REPORT AND RECOMMENDATION - 8

364-65. He diagnosed plaintiff with lumbar radiculopathy and cervical radiculopathy. AR 361. He opined that plaintiff was limited to sedentary work, meaning that can "lift 10 pounds maximum and frequently lift or carry lightweight articles" and "walk or stand only for brief periods." AR 362. But Dr. Brunk also opined that plaintiff's lumbar and cervical radiculopathy would have a "marked" effect (meaning "[v]ery significant interference") on work activities including handling, pushing, pulling, and reaching. AR 361.

Dr. Packer, a consulting physician with the Washington State Department of Social and Health Services, reviewed Dr. Brunk's evaluation and affirmed it in a form opinion. AR 366-68. He made no clinical findings and gave no explanation. *See id.* For these reasons, although plaintiff challenges the ALJ's consideration of both Dr. Brunk and Dr. Packer's opinions, the discussion below refers only to Dr. Brunk's opinion.

The ALJ stated that he gave "significant weight" to Dr. Brunk's opinion. AR 24-25. Nonetheless, he apparently partially discounted Dr. Brunk's opinion based on inconsistencies the ALJ found between Dr. Brunk's opinions and his physical-examination findings while treating plaintiff. AR 25; *see* AR 322, 327, 332-33, 364, 381. The ALJ stated he gave "greater weight to another assessment that I find to be more consistent with the record as a whole." AR 25. And the ALJ found that even if plaintiff is limited to sedentary work, he can, according to the vocational expert's testimony, still perform other jobs in the national economy. AR 25, 71-73.

The ALJ did not acknowledge discounting Dr. Brunk's opinions, and he thus expressed his reasoning with "'less than ideal clarity.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoting *Alaska Dept. of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)) (Court must uphold unclear ALJ decision "if the agency's path may reasonably be discerned."). The ALJ apparently discounted Dr. Brunk's more restrictive findings as inconsistent with the normal

REPORT AND RECOMMENDATION - 9

findings the ALJ noted and because the ALJ found Dr. Platter's (another State agency consulting physician) April 2015 opinion more consistent with plaintiff's work history, treatment records, and examination findings. AR 25. The ALJ's reasoning is insufficient.

The ALJ did not give "specific and legitimate" reasons, supported by the record, to discount Dr. Brunk's opinion regarding plaintiff's hand and arm limitations. First, substantial evidence would not support a finding that Dr. Brunk's exam findings are inconsistent with his opinion on handling. *See* AR 322, 327, 332-33, 381. The routine physical exams that Dr. Brunk performed did not test hand and arm strength or sensation. *See, e.g.*, AR 322, 327, 332-33, 381 (noting decreased range of motion in thumb joint). But Dr. Brunk's notes show that he was treating plaintiff for numbness and tingling in his hands. AR 322 (noting numbness in hands as problem and recommending cervical-spine MRI), 380 (noting complaints of numbness and tingling).

Moreover, numbness and weakness in plaintiff's hands and arms were a constant concern in his visits to the pain clinic. *See, e.g.*, AR 390, 410, 429, 472, 498, 724, 727, 760. A nurse practitioner at the pain clinic found that plaintiff had objective signs of neurological causes of pain in the hands and arms. *See* AR 392, 416, 426 (noting "positive spurling [sign] causing increasing pain in both [upper extremities]").[2]

Because the ALJ erred in discounting Dr. Brunk's opinion that plaintiff is severely limited in using his hands and arms (handling, pushing, pulling, and reaching), the ALJ also erred in relying on the vocational expert's testimony that plaintiff could perform jobs at a sedentary level. *See* AR 25, 72-73. The vocational expert testified that a limitation to "occasional

---

[2] The record contradicts the ALJ's finding that Dr. Brunk's exams generally showed a normal range of motion in plaintiff's joints: in an exam on the same day Dr. Brunk completed the evaluation, he found decreased ranges of motion in every joint he tested. AR 381.

REPORT AND RECOMMENDATION - 10

handling or fingering" would preclude plaintiff from performing the sedentary jobs the expert had identified. AR 73-74.

Because the ALJ erred in failing to address the limitation Dr. Brunk assessed in plaintiff's use of his hands and arms, the ALJ erred in relying on the vocational expert's testimony at step five. *See* AR 26-27. Remand is warranted for the ALJ to consider the medical evidence pertaining to plaintiff's ability to use his hands and arms at sedentary work.

## V.   THE ALJ'S CONSIDERATION OF PLAINTIFF'S TESTIMONY

Plaintiff also asserts that the ALJ erred in evaluating his subjective symptom testimony because the ALJ failed to give clear and convincing reasons to reject that testimony. The undersigned agrees.

Questions of credibility[3] are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid as long as that

---

[3] Since the ALJ's ruling in this case, the Social Security Administration issued a ruling to "'eliminat[e] the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term' and to 'clarify that subjective symptom evaluation is not an examination of an individual's character' but instead was meant to be consistent with 'our regulatory language regarding symptom evaluation.'" *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (quoting SSR 16–3p (2016)). As the Ninth Circuit explained, the new

> ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Id.* (emphasis added).

REPORT AND RECOMMENDATION - 11

1    determination is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144,

2    1148 (9th Cir. 2001).

3            In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ

4    must determine whether there is objective medical evidence of an underlying impairment that

5    could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v.*

6    *Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). If the first step is satisfied, and provided there is

7    no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of

8    the severity of symptoms if the ALJ can provide specific findings and clear and convincing

9    reasons for rejecting the claimant's testimony. *Id.*

10

11           To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

12   reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).

13   The ALJ "must identify what testimony is not credible and what evidence undermines the

14   claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

15

16           Here, plaintiff's testimony focused on his limitations from neck and back pain. However,

17   plaintiff also testified to related impairments in reaching and handling. He testified that both

18   before and after his neck surgery he had "a lot of problems with my fingers being numb" and "a

19   lot of pain going down both arms," continuing up until the hearing. AR 47. He testified that he

20   feels numbness in his hands when he tries to reach, grip, push, pull, or lift objects. *Id.* He also

21   testified that his hands go numb when he sits "a certain way" and that he has to "move my hands

22   and readjust how I'm sitting, move my neck around." *Id.* He said it does not resolve quickly from

23   moving or stretching. AR 48. He said that he can, for instance, make a sandwich, though his

24   hands feel weak. AR 49. He said that he had "been dropping a lot of stuff." *Id.* He said that, in

25

26

REPORT AND RECOMMENDATION - 12

addition to having neck pain, his fingers go numb after five or ten minutes using a tablet computer. AR 50.

The ALJ found that, with respect to plaintiff's physical abilities, he had residual functional capacity to "lift and carry ten pounds frequently and twenty pounds occasionally. He can sit for six hours in an eight-hour workday, and can stand and/or walk for two hours in the same period. He can occasionally stoop, kneel, crouch, crawl, and climb. He should avoid concentrated exposure to vibration and hazards." AR 21. The ALJ did not find any limitation of plaintiff's ability to push, pull, reach, handle, or manipulate. AR 21-25.

The ALJ gave several reasons for discounting plaintiff's testimony about other physical symptoms, and about his limitations in general. The first reason relied upon by the ALJ—that plaintiff was able to perform light work as a courier up until his alleged onset date, and that he did not quit that job due to his impairments, AR 22—does not justify rejecting plaintiff's hand and arm symptoms, however, because the record indicates those symptoms arose shortly after the alleged onset date. *See* AR 322 (first diagnosis of numbness by Dr. Brunk dated October 2014). Moreover, the ALJ made no findings regarding the plaintiff's use of his hands and arms in that job.

The ALJ's second reason—that objective evidence in the record did not support the degree of impairment plaintiff testified to, in that "examination findings only document mild deficits in his physical functioning," whereas plaintiff's "pain symptoms have been adequately managed since his alleged onset date," AR 22-23—is neither sufficiently specific nor supported by substantial evidence with respect to plaintiff's hand and arm symptoms. The only objective finding the ALJ cites regarding those symptoms—"[h]e displayed diffusely decreased sensation in his left arm"—supports plaintiff's testimony. AR 23, 392. Further, in addition to numerous

REPORT AND RECOMMENDATION - 13

1    subjective reports of numbness and pain, *see, e.g.*, AR 400, 414, 727, 746, the record contains

2    objective findings that support the plaintiff's testimony. *See* AR 416, 426 (noting "positive

3    spurling causing increasing pain in both [arms]"). The ALJ was required to consider these

4    records in evaluating plaintiff's testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir.

5    2014) (holding ALJ may not "cherry pick" evidence that disfavors disability without considering

6    its context in record).

7        The third reason the ALJ gave (AR 23) —that the record shows plaintiff's conditions

8    have improved since his December 2015 neck surgery (AR 511) and May 2016 back surgery

9    (AR 546) (cervical and lumbar spine),—is not a clear and convincing reason to reject plaintiff's

10   testimony. In particular, the ALJ cited a treatment note from May 2016 that showed normal

11   upper-extremity strength "including full handgrip strength" and intact sensation in the

12   extremities, AR 544-45. The ALJ also concluded that plaintiff's "recent examinations have noted

13   a lack of acute distress concurrent with his benign examination findings." AR 23 (citing AR 720,

14   725, 730, 735, 744, 752, 763, 806). However, the surgeries took place more than 12 months after

15   plaintiff's August 2014 alleged onset date, and the note the ALJ cited was written 21 months

16   after the alleged onset date. *See* AR 17, 23, 523, 544-45. The ALJ did not consider whether

17   plaintiff's hand and arm conditions persisted and prevented him from working for a continuous

18   period of 12 months or longer, as the social-security regulations require. *See Barnhart v. Walton*,

19   535 U.S. 212, 217-225 (2002); *see generally Bastien v. Califano*, 572 F.2d 908 (2nd Cir. 1978);

20   *Cutter v. Colvin*, 673 Fed. App'x 78 (2nd Cir. 2016) (holding that if claimant proves continuous

21   disability for at least a 12-month period between onset date and final SSA determination,

22   claimant has met burden of proof for that period).

26

REPORT AND RECOMMENDATION - 14

The Commissioner asserts that the ALJ's finding that, while plaintiff testified he was able to ride a bike for only about the length of a football field, he had told Dr. Brunk he could ride for a couple of miles, "was an adequate reason to discount his testimony." Dkt. 15, p. 6. This single inconsistency would not justify rejecting plaintiff's testimony as a whole. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (holding "single line" of inconsistent testimony regarding alcohol use was not clear and convincing reason to discount claimant's testimony). Nor would it justify rejecting plaintiff's specific testimony about hand and arm limitations, where the ALJ offered no explanation for how the inconsistency about riding a bike undermined that testimony.

Thus, the ALJ's reasons were not sufficiently cogent or specific to properly discount plaintiff's testimony about limitations from pain and numbness in his hands and arms. *See Lester*, 81 F.3d at 834. The Court should direct the ALJ to reevaluate plaintiff's testimony on remand.

## VI.  REMAND FOR FURTHER PROCEEDINGS

Plaintiff does not argue that this case should be remanded for an award of benefits. Dkt. 11, 16. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be

REPORT AND RECOMMENDATION - 15

required on remand to find that the claimant is disabled; and fifth, the reviewing court has no

serious doubts as to whether the claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th

Cir. 2017); *Revels,* 874 F.3d at 668.

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district

court should remand to the agency for further proceedings. *Leon*, 880 F.3d at 1045 (quoting

*Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014). If the district court

concludes that additional proceedings can remedy the errors that occurred in the original hearing,

the case should be remanded for further consideration. *Revels*, 874 F.3d at 668.

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting

plaintiff's testimony about his limitations and severity of symptoms, and for discounting medical

opinion evidence from plaintiff's treating physician. Issues remain regarding the evidence

concerning plaintiff's functional limitations. Accordingly, the Court should find that remand for

further consideration of those issues is warranted.

Specifically, the Court should direct the Commissioner to re-evaluate plaintiff's

testimony and the medical evidence as they relate to plaintiff's ability to use his hands and arms.

The Court should instruct the Commissioner that a new hearing and new medical evidence are

not necessary to address the errors identified above, as the contested period ended before the

previous ALJ hearing and plaintiff acknowledges that no additional evidence is required, Dkt.

11, pp. 1-2.

## VII.  CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the

ALJ improperly determined plaintiff to be not disabled before September 13, 2016, and therefore

REPORT AND RECOMMENDATION - 16

that it reverse the ALJ's decision to deny benefits and remand for further administrative proceedings as described above.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **October 19, 2018**, as noted in the caption.

Dated this 28th day of September, 2018.


*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17